## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## EASTERN DIVISION

U.S. COMMODITY FUTURES
TRADING COMMISSION,

    Plaintiff,

    v.

TRADEWIND INVESTMENTS, LLC,
GARY FUTCH and BRADLEY FUTCH,

    Defendants.

*4:11CV190 HTW-LRA*

SOUTHERN DISTRICT OF MISSISSIPPI
FILED

NOV 29 2011

J. T. NOBLIN, CLERK
BY_____ DEPUTY

## COMPLAINT FOR INJUNCTIVE AND OTHER EQUITABLE RELIEF AND PENALTIES UNDER THE COMMODITY EXCHANGE ACT

### Summary

1. Defendant Tradewind Investments, LLC ("Tradewind") was a Mississippi-based registered Commodity Trading Advisor ("CTA") run by Gary and Bradley Futch, who are father and son respectively (collectively, "Defendants"). From early 2007 through October 2008, Tradewind took in approximately $5.6 million in funds from about 25 clients, most of whom were family, friends, or acquaintances of the Futches. Tradewind, which had discretion over all of the accounts of its clients, offered a trading program focused on selling option spreads, with the purchase of "protective" options positions further out of the money that were intended to reduce the risk of loss.

2. In the course of soliciting clients for Tradewind, Gary and Bradley Futch made a series of fraudulent misrepresentations including: (a) misrepresenting their respective roles with Tradewind; (b) promising that Tradewind would never leave its clients' options spreads "naked,"

1

*i.e.*, without protective positions in place; (c) promising that no more than 25% of a client's funds would ever be at risk with any given trade; and (d) claiming that Tradewind's strategy ensured that its clients would never receive margin calls. These misrepresentations were intended to, and did, mislead Tradewind clients about the risks inherent in selling options. Gary and Bradley Futch knew that these misrepresentations were false when they made them.

3.      During a particularly volatile market day on October 10, 2008, Tradewind's trading strategy failed, resulting in complete losses, plus additional margin calls, for all of Tradewind's clients. Losses totaled over $5.4 million. Tradewind ceased operations shortly thereafter, and Gary and Bradley Futch each filed for bankruptcy.

4.      By virtue of this conduct and the conduct further described herein, Defendants have engaged in conduct in violation of Sections 4c(b) and 4o(1)(A) and (B) of the Commodity Exchange Act ("Act"), 7 U.S.C. §§ 6c(b) and 6o(1)(A) and (B) (2006), and Commission Regulation ("Regulation") 33.10(a) and (c), 17 C.F.R. § 33.10(a), and (c) (2011).

5.      Accordingly, pursuant to Section 6c(a) of the Act, 7 U.S.C. § 13a-1 (2006 and Supp. 2009), the Commodity Futures Trading Commission ("Plaintiff", "CFTC" or "Commission") brings this action to enjoin the unlawful acts and practices of Defendants. In addition, Plaintiff seeks disgorgement of all benefits received by Defendants, restitution, rescission, civil monetary penalties, and such other equitable relief that the Court may deem necessary or appropriate.

### Jurisdiction and Venue

6.      The Court has jurisdiction over this action pursuant to Section 6c of the Act, 7 U.S.C. §13a-1, which provides that, whenever it shall appear to the Commission that any person has engaged in, is engaging in, or is about to engage in any act or practice that constitutes a violation of any provision of the Act or any rule, regulation, or order promulgated thereunder,

the Commission may bring an action against such person to enjoin such practice or to enforce compliance with the Act.

7.      Venue properly lies with this Court pursuant to Section 6c(e) of the Act, 7 U.S.C. §13a-1(e), because Defendants are found in, inhabit, or transact business in this District, or the acts and practices in violation of the Act occurred, are occurring, or are about to occur within this District, among other places.

8.      Unless restrained and enjoined by this Court, Defendants are likely to engage in the acts and practices alleged in this Complaint or in similar acts and practices, as described more fully below.

## Parties

9.      The U.S. Commodity Futures Trading Commission is an independent federal regulatory agency charged by Congress with the responsibility for administering and enforcing the provisions of the Act, as amended by the Dodd-Frank Wall Street Reform and Consumer Protection Act, Pub. L. No. 111-203, §§ 701-774, 124 Stat. 1376, 1641 et seq. (2010) ("Dodd-Frank Act"), to be codified at 7 U.S.C. §§ 1 *et seq.*, and the Commission's Regulations promulgated thereunder, 17 C.F.R. §§ 1.1 *et seq.* (2011).

10.     Gary Futch resides in Meridian, Mississippi.  He was registered with the Commission as an associated person ("AP") of Tradewind from February 2008 through June 2009.  Before working with Tradewind, Gary Futch had about five years of experience working for a different firm in the commodities industry.

11.     Bradley A. Futch is Gary Futch's son.  He resides in Meridian, Mississippi.  He was registered with the Commission as a CTA, listed as a principal and registered as an AP of Bradley Allen Futch d/b/a Tradewind Investments from that firm's formation in February 2007

through March 2008.  From February 2008 through June 2009, he was listed as a principal and registered as an AP of Tradewind Investments, LLC.

12.     <u>Tradewind Investments, LLC</u> had its principal place of business in Meridian, Mississippi.  It was formed in early 2008 and registered with the Commission as a CTA from February 2008 through June 2009.

**Facts**

13.     In early 2007 Bradley Futch, who had just graduated from college, began doing business as "Tradewind Investments."  Shortly thereafter, Gary Futch, who had worked for a different commodities firm for several years, decided to assist his son with the business.  In early 2008, Bradley Futch caused "Tradewind Investments, LLC" to be formed.  Throughout the life of Tradewind, Gary Futch handled the majority of the client contact, soliciting clients to open accounts, while Bradley Futch handled most of the trading.  Defendants' clients gave Tradewind the power to trade their accounts.

14.     When it first opened, Tradewind required a minimum investment of $50,000 from each client; that amount was raised to $500,000 in early 2008.  Tradewind took a monthly incentive fee of 30% of its clients' net trading profits and a monthly management fee of 1/12 of 1% of the value of its clients' accounts.  This compensation, which was shared by Gary and Bradley Futch, totaled approximately $250,000 through October 2008.

15.     Tradewind did no public advertising, instead relying on word of mouth to attract new clients.  By mid-2008, Tradewind had approximately 20 clients, several of whom had opened multiple accounts.

16.     Tradewind's trading strategy focused on selling out-of-the-money options spreads on S&P 500 Index Futures.  When prospective clients approached Defendants, they provided at

4

least some of them with a document titled "Trade Methodology," which touted Tradewind's

"risk reduction strategies" as follows:

> When something dramatic like [September 11th or the market crash of 1987]
> happens the market typically overreacts and large swings can take place…. In
> response to this, Tradewind has developed risk reduction strategies to protect
> against unlimited risk. For each trade, we can hedge our sold option positions by
> purchasing options at precisely calculated levels. For every option that is sold the
> strategy suggests purchasing a corresponding risk-limiting option. By purchasing
> these protective options above or below each sold call and put, **we can limit our
> market exposure in the event of a severe or sudden move in the market.**

(emphasis added). To further reduce risk, Defendants explained that Tradewind used no more

than 50% -- later reduced to 25% -- of each client's funds in each particular trade.

17.     In their oral and written communications with current and prospective clients,

both Gary and Bradley Futch made misleading, fraudulent statements. In particular, they

misrepresented their respective roles with Tradewind, leading prospective clients to believe that

Gary Futch, who had years of commodities experience, would be trading their accounts, instead

of Bradley Futch, who was a recent college graduate. They also falsely described Tradewind's

trading strategy as guaranteeing that it would never (a) subject its clients to margin calls, (b) risk

more than 25% of any client's money in a single trade; and (c) risk more than the total amount of

the client's investment.

18.     For example, in a January 29, 2008 email to a client, Gary Futch wrote:

> Most futures brokers trade using margin as this leverage allows for larger profit
> potential. However, we DO NOT TRADE ON THE MARGIN capability of your
> account. We NEVER expose you to more than what cash you have in the
> account. ALL brokerage firms (futures) want a personal guarantee on corporate
> accounts in case the client 'overtrades' and gets margin calls that the corp can't
> answer. I assure you we will not put you in this situation.

19.     Similarly, Gary Futch orally told at least one client that Tradewind would never place more than 25% of the client's funds at risk at one time and that the client would never receive a margin call.

20.     In a May 28, 2008 letter to a third client, the Futches made further fraudulent statements, claiming that Tradewind never left positions "naked," instead it was "ALWAYS buy[ing] the protection!". They also falsely claimed that Tradewind never risked more than 25% of a client's account in a single trade, stating:

> We also only put 25% max of your money at risk into any one trade. That means that if the trade was a complete loss, it would result in losing 25% of your account. That being said, we do not allow complete losses using our risk management rules.

Finally, the Futches claimed that Tradewind would "not trade on margin as we do not want to deal with margin calls . . . . [T]he value of your account is the Maximum risk."

21.     The statements described in paragraphs 16-20 above were false. Further, these misrepresentations were intended to and did mislead Tradewind clients into believing that Tradewind had developed a "safe" strategy for selling options. In fact, as the events of October 10, 2008 demonstrated, Tradewind clients were subject to enormous risks. In a single day, Tradewind clients lost not only all the total amount of funds invested, but were subject to margin calls approximating the total values of their accounts.

22.     The Futches knew or recklessly disregarded the fact that: (a) the risks inherent in selling options were much higher than they led their clients to believe; (b) their clients could receive margin calls, especially in particularly volatile markets; (c) their use of only 25% of a customer's funds to make a particular trade did not mean that the customer's maximum possible losses on a trade were limited to that 25%; and (d) their trading strategy involved frequently leaving trades "naked" during the trading day, with the hope that the market would move in a

6

favorable direction before the end of trading.  This practice exposed Tradewind clients to signficant undisclosed risks on days of high market volatility.

23.     On October 10, 2008, Tradewind's trading strategy failed to protect its clients from the day's particularly volatile markets.  Tradewind had a credit call spread on.  Bradley Futch called Tradewind's introducing broker to leg out of one side of the spread, but, hoping that the market would quickly rebound, he delayed on entering the other side of the order.

24.     When the market failed to rebound as Bradley Futch had expected, Tradewind clients lost their entire investment and they received  margin calls in an aggregate of approximately $5.6 million.

25.     Gary and Bradley Futch, acting by and through Tradewind, engaged in the acts and practices described above knowingly or with reckless disregard for the truth.

## VIOLATIONS OF THE COMMODITY EXCHANGE ACT

### Count One

### Commodity Options Fraud
### (7 U.S.C. § 6c(b) and C.F.R. § 33.10)

26.     Paragraphs 1 through 25 are re-alleged and incorporated herein.

27.     Section 4c(b) of the Act, 7 U.S.C. § 6c(b), makes it unlawful for any person to offer to enter into, enter into or confirm the execution of, any transaction involving any commodity regulated under the Act which is of the character of, or is commonly known to the trade as, an "option," "privilege," "indemnity," bid," "offer," "put," "call," "advance guaranty," or "decline guaranty," contrary to any rule, regulation, or order of the Commission prohibiting any such transaction or allowing any such transaction under such terms and conditions as the Commission shall prescribe.

28.     Regulation 33.10, 17 C.F.R. § 33.10,  makes it unlawful for any person directly or indirectly

(a) To cheat or defraud or attempt to cheat or defraud any other person;

(b) To make or cause to be made to any other person any false report or statement thereof or cause to be entered for any person any false record thereof;

(c) To deceive or attempt to deceive any other person by any means whatsoever in or in connection with an offer to enter into, the entry into, the confirmation of the execution of, or the maintenance of, any commodity option transaction.

29.     As set forth above, in 2007 and 2008, Gary and Bradley Futch, acting by and through Tradewind, violated Section 4c(b) of the Act, 7 U.S.C. § 6c(b), and Regulation 33.10, 17 C.F.R. § 33.10, by making false representations of material fact and by failing to disclose material facts when soliciting clients and prospective clients to invest in commodity options by, among other things, falsely representing the risks associated with selling commodity options.

30.     Gary and Bradley Futch were acting as agents to Tradewind when they engaged in the acts alleged herein.  Therefore, Tradewind is liable for the acts constituting their violations of Section 4c(b) of the Act, 7 U.S.C. § 6c(b), and Regulation 33.10, pursuant to Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2(a)(1)(B), and Regulation 1.2, 17 C.F.R. § 1.2.

31.     Gary and Bradley Futch controlled Tradewind and did not act in good faith or knowingly induced, directly or indirectly, the acts constituting Tradewind's violations alleged in this count.  Therefore, Gary and Bradley Futch are liable for Tradwind's violations of Section 4c(b) of the Act, 7 U.S.C. § 6c(b) and Regulation 33.10, 17 C.F.R. § 33.10, as controlling persons pursuant to Section 13(b) of the Act, 7 U.S.C. § 13c(b).

32.     Each false, deceptive, or misleading representation of material fact and each failure to disclose material facts, including but not limited to those specifically alleged herein, is

alleged as a separate and distinct violation of Section 4c(b) of the Act, 7 U.S.C. §6c(b), and Regulation 33.10, 17 C.F.R. § 33.10.

**COUNT TWO**

**Fraud by a CTA and its APs**
**(Section 4*o*(1)(A) and (B))**

33.     Paragraphs 1 through 25 are realleged and incorporated herein by reference.

34.     Section 4*o*(1) of the Act, in relevant part, prohibits CTAs and their APs, by use of the mails or any means or instrumentality of interstate commerce, directly or indirectly (A) to employ any device, scheme or artifice to defraud any client; or (B) to engage in any transaction, practice or course of business that operates as a fraud or deceit upon any client.

35.     In 2007 and 2008, Gary and Bradley Futch, while acting as APs of a CTA, and Tradewind, while acting as a CTA, violated Section 4*o*(1) of the Act, 7 U.S.C. § 6*o*(1), in that they employed schemes or artifices to defraud clients or prospective clients or engaged in transactions, practices or a course of business which operated as a fraud or deceit upon clients or prospective clients by using the mails or other means or instrumentalities of interstate commerce. In particular, defendants falsely represented the risks involved in selling commodity options.

36.     The use of the mails or other instrumentalities of interstate commerce included, but are not limited to (a) making wire transfers to and from Tradewind's bank accounts and trading accounts, and (b) communicating with clients through the telephone, via email, and through the mails, all in violation of Sections 4*o*(1)(A) and (B) of the Act.

37.     The acts, omissions and failures of Gary and Bradley Futch, as described in this Count Two, were committed within the scope of their employment with Tradewind and, therefore, Tradewind is liable for their acts, omissions and failures constituting violations of

9

Section 4*o*(1) of the Act, pursuant to Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2(a)(1)(B), and Commission Regulation 1.2, 17 C.F.R. § 1.2 (2011).

38.     During the relevant time, Gary and Bradley Futch directly and indirectly controlled Tradewind, and did not act in good faith or knowingly induced, directly or indirectly, the acts constituting Tradewind's violations described in this Count Two.  Pursuant to Section 13(b) of the Act, 7 U.S.C. § 13c(b), Gary and Bradley Futch are therefore liable for Tradewind's violations described in this Count Two to the same extent as Tradewind.

39.     Each misrepresentation or omission of material fact, including but not limited to those specifically alleged herein, is alleged as a separate and distinct violation of Sections 4*o*(1)(A) and (B) of the Act.

## RELIEF REQUESTED

WHEREFORE, Plaintiff respectfully requests that this Court, as authorized by Section 6c of the Act, 7 U.S.C. §13a-1, and pursuant to its own equitable powers enter:

A.     An order finding Defendants violated: Sections 4c(b) and 4*o*(1)(A) and (B) of the Act, 7 U.S.C. §§ 6c(b) and 6*o*(1)(A) and (B) (2006), and Regulation 33.10(a) and (c), 17 C.F.R. § 33.10(a) and (c) (2011);

B.     An order of permanent injunction prohibiting Defendants and any other persons or entities in active concert with them from engaging in conduct in violation of Sections 4c(b) and 4*o*(1)(A) and (B) of the Act, 7 U.S.C. §§ 6c(b) and 6*o*(1)(A) and (B) (2006), and Regulation 33.10(a) and (c), 17 C.F.R. § 33.10(a) and (c);

C.     An order of permanent injunction prohibiting Defendants and any of their affiliates, agents, servants, employees, successors, assigns, attorneys and persons in active

concert with them who receive actual notice of such order by personal service or otherwise, from engaging, directly or indirectly, in:

      1.    trading on or subject to the rules of any registered entity, as that term is defined in Section 1a(29) of the Act, as amended by the Dodd-Frank Act, to be codified at 7 U.S.C. § 1a(29);

      2.    entering into any transactions involving commodity futures, options on commodity futures, commodity options (as that term is defined in Commission Regulation 32.1(b)(1), 17 C.F.R. § 32.1(b)(1) (2011)) ("commodity options"), and/or foreign currency (as described in Sections 2(c)(2)(B) and 2(c)(2)(C)(i) of the Act, as amended by the Dodd-Frank Act, to be codified at 7 U.S.C. §§ 2(c)(2)(B) and 2(c)(2)(C)(i)) ("forex contracts") for their own personal account or for any account in which they have a direct or indirect interest;

      3.    having any commodity futures, options on commodity futures, commodity options, and/or forex contracts;

      4.    controlling or directing the trading for or on behalf of any other person or entity, whether by power of attorney or otherwise, in any account involving commodity futures, options on commodity futures, commodity options, and/or forex contracts;

      5.    soliciting, receiving, or accepting any funds from any person for the purpose of purchasing or selling any commodity futures, options on commodity futures, commodity options, and/or forex contracts;

      6.    applying for registration or claiming exemption from registration with the Commission in any capacity, and engaging in any activity requiring such registration or

exemption from registration with the Commission, except as provided for in Commission Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2011);

      7.     acting as a principal (as that term is defined in Commission Regulation 3.1(a), 17 C.F.R. § 3.1(a) (2011)), agent or any other officer or employee of any person or entity registered, exempted from registration or required to be registered with the Commission, except as provided for in Commission Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2011);

D.     An order directing Defendants to pay civil monetary penalties under Section 6c of the Act, 7 U.S.C. §9a, to be assessed by the Court separately against each of them, in amounts not more than the higher of $130,000 for each violation or triple the monetary gain to Defendants for each violation of the Act;

E.     An order directing Defendants to disgorge, pursuant to such procedure as the Court may order, all benefits received from the acts or practices that constitute violations of the Act, as described here, and prejudgment interest thereon from the date of such violations;

F.     An order directing Defendants to make restitution by making whole each and every client of Tradewind whose funds were received or used by them in violation of the provisions of the Act as described herein, including pre-judgment interest;

G.     An order directing Defendants, and any successors thereof, to rescind, pursuant to such procedures as the Court may order, all contracts and agreements, whether implied or express, entered into between them and any of the participants whose funds were received by them as a result of the acts and practices which constituted violations of the Act, as amended, as described herein;

H.   An order requiring Defendants to pay costs and fees as permitted by 28 U.S.C. §§ 1920 and 2412 (2006); and

I.   Such further relief as the Court deems appropriate.


Dated:       November 29, 2011                    Respectfully submitted,


Jennifer E. Smiley
Joseph A. Konizeski
Scott R. Williamson
Rosemary Hollinger
U.S. COMMODITY FUTURES
TRADING COMMISSION
Division of Enforcement
525 West Monroe Street, Suite 1100
Chicago, IL  60661
(312) 596-0530 (Smiley)
(312) 596-0546 (Konizeski)
(312) 596-0714 (facsimile)
jsmiley@cftc.gov
jkonizeski@cftc.gov

13